**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, AMCO INSURANCE COMPANY, and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY | CIVIL ACTION<br><br>NO. 2:22-CV-02065 |
| v. | |
| 4200 ROOSEVELT LLC, 4200 ROSE HOSPITALITY, LLC, WYNDHAM WORLDWIDE CORPORATION, WYNDHAM HOTEL & RESORTS, INC., WYNDHAM HOTEL AND RESORTS, LLC, WYNDHAM HOTEL MANAGEMENT, INC., WYNDHAM HOTEL GROUP, LLC, SURATI MANAGEMENT GROUP, LLC, and A.H., AN INDIVIDUAL | **BRIEF OF THE WYNDHAM DEFENDANTS' IN SUPPORT OF MOTION TO DISMISS OR STAY PLAINTIFFS' COMPLAINT** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 4

LEGAL ARGUMENT .............................................................................................................. 7

   **I.**    **PLAINTIFFS FAIL TO ALLEGE A JUSTICIABLE "CASE OR CONTROVERSY."** ................................................................................................... 7

      a.   Adversity of Interest .................................................................................. 9

      b.   Conclusivity of a Declaratory Judgment ................................................ 11

      c.   Utility of a Declaratory Judgment ......................................................... 13

   **II.**    **PLAINTIFFS LACK A STATUTORY BASIS FOR INVOKING FEDERAL JURISDICTION OVER THIS ACTION.** ................................................................ 14

   **III.**   **ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND DISMISS OR STAY THE ACTION.** ........................................... 17

CONCLUSION ......................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937)..................................................................................................7

*Allstate Insurance Co. v. Antoine*,
2012 WL 707069 (E.D. Pa. 2012) ..........................................................................20

*Am. States Ins. Co. v. Component Techs., Inc.*,
420 F. Supp. 2d 373 (M.D. Pa. 2005) ....................................................................12

*Armstrong World Indus., Inc. v. Adams*,
961 F.2d 405 (3d Cir. 1992)..........................................................................8, 9, 11, 13

*Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*,
835 F.3d 388 (3d Cir. 2016).....................................................................................15

*AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*,
135 F. Supp. 3d 321 (W.D. Pa. 2015)................................................................12, 14

*Bird v. Penn Cent. Co.*,
351 F. Supp. 700 (E.D. Pa. 1972) .............................................................................8

*California v. Texas*,
141 S. Ct. 2104 (2021)..............................................................................................14

*Camerlo v. Howard Johnson Co.*,
710 F.2d 987 (3d Cir. 1983).......................................................................................8

*Charter Oak Fire Ins. Co. v. Lazenby*,
No. 1:10-CV-00138-MBC, 2012 WL 2958246 (W.D. Pa. July 18, 2012)..............10

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013).......................................................................................7

*Essex Ins. Co. v. J&D Blackwell Enterprises, Inc.*,
1993 WL 19743 (E.D. Pa. Jan. 25, 1993), *aff'd*, 16 F.3d 403 (3d Cir. 1993) ........16

*Knightbrook Ins. Co. v. DNA Ambulance, Inc.*,
No. CIV.A. 13-2961, 2013 WL 12145016 (E.D. Pa. Oct. 2, 2013)........................10

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178 (1936).................................................................................................7

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ...........................................................................................8

*Medline Indus. Inc. v. Beckett Healthcare Inc.*,
    2000 WL 33711093 (Phil. Ct. Comm. Pl. Feb. 22, 2000) ........................................6

*Mt. Hawley Ins. Co. v. Lincoln Hotels, LLC, et al.*,
    No. 1:20-CV-4444-WMR, 2021 WL 1351858 (N.D. Ga. Mar. 15, 2021) ............................21

*Nationwide Mut. Fire Co. v. Shank*,
    951 F. Supp. 68 (E.D. Pa. 1997) ...................................................................17, 21

*Reifer v. Westport Ins. Corp.*,
    751 F.3d 129 (3d Cir. 2014)........................................................................17, 18, 19

*Slate Bar & Lounge*,
    2017 WL 4681311 ...................................................................................10, 17

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283 (1938)................................................................................15

*Step-Saver Data Systems, Inc. v. Wyse Technology*,
    912 F.2d 643 (3d. Cir. 1990)...................................................................10, 11, 12

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
    887 F.2d 1213 (3d Cir. 1989)....................................................................14

*Travelers Ins. Co. v. Davis*,
    490 F.2d 536 (3d Cir. 1974)....................................................................13

*Travelers Ins. Co. v. Obusek*,
    72 F.3d 1148 (3d Cir. 1995)....................................................................8, 9, 10

*Victoria Ins. Co. v. Mincin Insulation Servs., Inc.*,
    No. CIV A 08-909, 2009 WL 90644 (W.D. Pa. Jan. 14, 2009).........................................10, 15

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)................................................................................17

**Statutes**

28 U.S.C. § 1332 ........................................................................................3, 14, 15, 16

28 U.S.C. § 2201 ........................................................................................1, 7, 14, 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...............................................................1, 3, 14, 15

iv

Federal Rule of Evidence 201 ..................................................................................................5

15A MOORE'S FEDERAL PRACTICE - CIVIL § 102.100 (2022) ........................................16

U.S. CONST. ART. III § 2 ...............................................................................................3, 7, 9, 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, AMCO INSURANCE COMPANY, and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY <br><br> v. <br><br> 4200 ROOSEVELT LLC, 4200 ROSE HOSPITALITY, LLC, WYNDHAM WORLDWIDE CORPORATION, WYNDHAM HOTEL & RESORTS, INC., WYNDHAM HOTEL AND RESORTS, LLC, WYNDHAM HOTEL MANAGEMENT, INC., WYNDHAM HOTEL GROUP, LLC, SURATI MANAGEMENT GROUP, LLC, and A.H., AN INDIVIDUAL | CIVIL ACTION <br><br> NO. 2:22-CV-02065 <br><br><br> **BRIEF OF THE WYNDHAM DEFENDANTS' IN SUPPORT OF MOTION TO DISMISS OR STAY PLAINTIFFS' COMPLAINT** |

Defendants Wyndham Worldwide Corporation (n/k/a Travel + Leisure Co.); Wyndham Hotels & Resorts, Inc.; Wyndham Hotels and Resorts, LLC; Wyndham Hotel Management, Inc.; and Wyndham Hotel Group, LLC (collectively, the "Wyndham Defendants") hereby submit this brief in support of their motion to dismiss or stay (the "Motion") the complaint filed on May 26, 2022 (the "Complaint") by plaintiffs Depositors Insurance Company; Nationwide Property & Casualty Insurance Company; AMCO Insurance Company; and Nationwide Mutual Fire Insurance Company (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2201.

**PRELIMINARY STATEMENT**

In this lawsuit, Plaintiffs seek a judgment declaring that they have no duty to defend or indemnify their insureds, including the Wyndham Defendants, in connection with the underlying case, captioned *A.H. v. Roosevelt Inn, LLC, et al.*, Case No. 200102954 (the "Underlying

Action").[1] Plaintiffs seek this declaration notwithstanding the fact that the Philadelphia County Court of Common Pleas effectively stayed the Underlying Action more than a year ago by placing it on "deferred" status.

Contrary to deeply rooted principles of federal law, Plaintiffs seek to invoke this Court's jurisdiction to obtain an advisory opinion on what its obligations *might* be, should a long-deferred case be revived. What Plaintiffs' Complaint fails to disclose, and what Plaintiffs apparently failed to appreciate when they filed this case, is that the Court of Common Pleas has effectively stayed the Underlying Action for more than one year. At present and for the foreseeable future, nothing is required of Plaintiffs by way of defense or indemnity because the Underlying Action is at a standstill with no signs of changing. Because Plaintiffs seek a contingent declaration that will only become relevant upon a hypothetical change in the status of the Underlying Action, this action does not set forth a "case" or "controversy" as required for this Court to have jurisdiction. In addition, because the Underlying Action is effectively stayed, Plaintiffs cannot meet their burden to establish the amount in controversy required to invoke diversity jurisdiction.

Should the Court determine that it has jurisdiction, the Court should nevertheless abstain from hearing this case. There is a palpable conflict of interest between the Plaintiffs' goal of defeating insurance coverage by any means necessary, including allegations essentially adopting the underlying plaintiff's allegations in the Underlying Action and contrary to their insureds' defenses, and Plaintiffs' obligations to protect their insureds' interests in the Underlying Action. Plaintiffs seek to use this declaratory judgment action to resolve factual issues with no regard to

---

[1] In Count IX, Plaintiffs seek a declaration that they have no duty to indemnify the Wyndham Defendants for liability based on primary negligence or wrongdoing as opposed to vicarious liability but do not seek a declaration with respect to their duty to defend. ECF 1, at 29-30. In Count XI, Plaintiffs seek a declaration regarding their duty to defend, but not to indemnify. ECF 1, at 33.

how the resolution of such issues could prejudice the Wyndham Defendants in the Underlying Action. Pursuant to the Court's inherent authority and the Declaratory Judgment Act, this Court should abstain from hearing this case and either dismiss or stay the case.

For these reasons, the Wyndham Defendants move to dismiss Plaintiffs' Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. In the alternative, the Wyndham Defendants respectfully request that this Court abstain from hearing this action and either dismiss or stay this declaratory judgment action.

First, Article III of the Constitution provides that federal courts may exercise jurisdiction over only "Cases" and "Controversies." Under well-established precedent, to meet this requirement, a dispute must be concrete and actual, as opposed to remote or hypothetical. Plaintiffs' Complaint is premised on hypothetical duties with respect to the long-dormant Underlying Action; therefore, no actual, immediate, or concrete dispute exists between the parties. Accordingly, the Court does not have jurisdiction over this matter. Nor can Plaintiffs maneuver around Article III by invoking the Declaratory Judgment Act, as it is similarly well established that, in enacting the Declaratory Judgment Act, Congress merely created a remedy and incorporated the case or controversy requirement of Article III. Thus, even actions seeking declaratory judgments must meet this constitutional standard.

Second, as this case exists now and when it was filed in May, Plaintiffs cannot establish there is more than $75,000 in controversy, which is required to trigger this Court's subject matter jurisdiction under § 1332. While Plaintiffs aver a sufficient amount in controversy in their Complaint, there is no reasonable basis for Plaintiffs to expect that this action is worth greater than $75,000 given the status of the Underlying Action. Accordingly, Plaintiffs' inability to meet the

3

amount-in-controversy requirement is an independent reason why this Court should dismiss this action for lack of subject matter jurisdiction.

Third, and in the alternative, the Court should invoke its broad discretion under the Declaratory Judgment Act to abstain from exercising jurisdiction over this matter for the reasons discussed further in Section III. With the Underlying Action effectively stayed indefinitely, there is no legitimate benefit to litigating this action. Allowing this proceeding to continue is a waste of resources for both the litigants and the Court. In addition to providing no legitimate benefit, litigating this action presents a substantial risk of prejudice because, should the Underlying Action someday be revived, Plaintiffs' requested relief requires the resolution of key factual and legal issues that would likely prejudice the Wyndham Defendants in their defense of the Underlying Action.

There is no explanation for why Plaintiffs chose to bring this action now, seeking a declaration regarding Plaintiffs' future obligations for a dormant claim. There have been no meaningful, if any, defense costs incurred in over a year, and there is no current prospect of any indemnity obligation being incurred. Whatever motivated Plaintiffs to bring this action, it was not the desire to litigate a real and present dispute. In these circumstances, the Court should dismiss this action for lack of subject matter jurisdiction or, in the alternative, exercise its discretion to abstain by dismissing or staying this action.

## STATEMENT OF FACTS

The complaint in the Underlying Action seeks damages resulting from allegations that A.H. was a victim of human trafficking that is alleged to have occurred, in part, at a hotel located at 4200 Roosevelt Blvd., Philadelphia, Pennsylvania (the "Hotel"), which allegedly resulted in bodily

injury and personal injury. *See generally* ECF 1-1.[2] The complaint in the Underlying Action alleges that, as a result of A.H.'s trafficking at this location, the Wyndham Defendants, which through an affiliate entered into a license agreement with the operator allowing operation of the Hotel as a "Days Inn"® guest lodging facility, are liable for damages, on theories of negligence; negligent infliction of emotional distress; intentional infliction of emotional distress; and negligent hiring, training, and/or supervision. ECF 1-1 (Counts IX-XIII).[3]

The Underlying Action was filed on January 24, 2020 in the Philadelphia County Court of Common Pleas. Fleury Decl., Ex. 1, A.H., at 10.[4] In connection with a June 16, 2021 bankruptcy filing of Roosevelt Inn, LLC and Roosevelt Motor Inn, Inc., which are co-defendants in the Underlying Action but not parties to this declaratory judgment action, the Underlying Action was stayed on June 16, 2021 and then removed to the U.S. District Court for the Eastern District of Pennsylvania on July 22, 2021. Fleury Decl., Ex. 1, A.H., at 37-39. Around the same time, three other cases (K.R., C.A., and B.H., which seek damages against, *inter alia*, the Wyndham Defendants and make similar allegations as the allegations in the Underlying Action) were also stayed and removed to the District Court. Fleury Decl., Ex. 2, K.R., at 28-29; Ex. 3, C.A., at 86, 88; and Ex. 4, B.H., at 70, 72.

---

[2] The Wyndham Defendants deny all allegations of liability set forth in the Underlying Action or otherwise and, by choosing not to address any such allegations in connection with this Motion, the Wyndham Defendants do not concede the truth or validity of any of such allegations. Rather, all defenses of the Wyndham Defendants to the allegations in the Underlying Action are reserved.

[3] Both the Underlying Action and this action also name 4200 Roosevelt LLC and 4200 Rose Hospitality, LLC as defendants. Both entities are named insureds under the subject insurance policies. The arguments set forth in this Motion apply with equal force to both entities.

[4] Pursuant to Federal Rule of Evidence 201, the Wyndham Defendants request that this Court take judicial notice of the dockets in the A.H., K.R. (No. 191100552), C.A. (No. 190303355), and B.H. (No. 190303356) matters in the Philadelphia Court of Common Pleas. Copies of these docket sheets are attached to the Declaration of Erin Fleury in Support of the Wyndham Defendants' Motion to Dismiss (the "Fleury Decl."), Exhibits 1, 2, 3, and 4, respectively.

On October 27, 2021, the District Court remanded A.H. and the other three cases back to the state court with respect to the claims against the non-debtors, including the Wyndham Defendants. *E.g.*, Fleury Decl., Ex. 1, A.H., at 40 (November 8, 2021 entry of the District Court's October 27, 2021 order). At that time, the Underlying Action and the three other actions were placed back on the deferred docket in the Court of Common Pleas. Fleury Decl., Ex. 1, A.H., at 40; Ex. 2, K.R., at 30; Ex. 3, C.A., at 89; and Ex. 4, B.H., at 73. A case on the deferred docket is effectively stayed, and reactivation of such a case requires a motion. *See Medline Indus. Inc. v. Beckett Healthcare Inc.*, 2000 WL 33711093 at * 1-2 (Phil. Ct. Comm. Pl. Feb. 22, 2000) (referring to deferred status as a "stay" and ruling on motion to remove case from deferred status).

Within weeks of being remanded, the underlying plaintiffs in all three of the other cases filed motions and began to move the cases forward, with significant discovery, motions practice, and other case developments occurring since that time. *E.g.*, Fleury Decl., Ex. 2, K.R., at 30 (November 18, 2021 motion to sever cases); Ex. 3, C.A., at 89 (same); and Ex. 4, B.H., at 73 (same). The Underlying Action, on the other hand, has remained effectively stayed with no effort to remove the case from the deferred docket and no progress whatsoever since the case was remanded. Fleury Decl., Ex. 1, A.H., at 40-41 (showing the only docket entries since the case was remanded are a December 2021 entry of an October 7, 2021 Superior Court order and several entries and withdrawals of appearances).

When Plaintiffs initiated this declaratory judgment action on May 26, 2022, it had already been more than eleven months since the Underlying Action was effectively stayed without any steps taken to remove the case from the deferred docket or otherwise progress the case since the Underlying Action was remanded. It has now been over fourteen months and there has still been no change. Plaintiffs do not dispute the Underlying Action remains in deferred status. ECF 29, ¶ 4

("It is admitted that the complaint filed in the 'Underlying Suit' is currently in a deferred status[.]"). Apparently unaware of the effective stay of the Underlying Action, Plaintiffs filed this action, seeking a declaratory judgment that they do not owe the Wyndham Defendants or the franchisee defendants a duty to defend or indemnify with respect to the Underlying Action on several bases, alleging that coverage is barred by Pennsylvania public policy and by various policy exclusions. *See generally* ECF 1. In doing so, Plaintiffs attempt to characterize the Wyndham Defendants' conduct in ways that fall outside of coverage, despite a number of the same issues being at the heart of the Underlying Action. *Id.*

## LEGAL ARGUMENT

### I.   **PLAINTIFFS FAIL TO ALLEGE A JUSTICIABLE "CASE OR CONTROVERSY."**

Deeply rooted in the history of the federal courts is the concept that they operate with limited jurisdiction. That is, federal courts may adjudicate disputes only in instances provided by the Constitution and pursuant to specific congressional authorization. In light of this fundamental constitutional precept, federal courts recognize a presumption against federal court subject matter jurisdiction and a party seeking to invoke federal jurisdiction bears the burden of demonstrating at the outset that the federal court has authority. *E.g.*, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936).

Plaintiffs fail to allege a justiciable controversy under Article III of the Constitution. It is well established that federal courts have jurisdiction only over "Cases" and "Controversies." U.S. CONST. ART. III § 2. The Declaratory Judgment Act does not vitiate this requirement, but instead, incorporates it. *See* 28 U.S.C. § 2201(a) (court may issue declaratory judgments only in "case[s] of actual controversy within its jurisdiction"); *see Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937) (upholding the constitutionality of the Declaratory

Judgment Act due to its requirement of a "controversy"). Thus, even with Congress' authorization

of the declaratory remedy, the Declaratory Judgment Act "is operative only in respect to

controversies in the constitutional sense," which requires that for a controversy to be properly

resolved, it "must be one that is appropriate for judicial determination." *Haworth*, 300 U.S. at 240.

In order to constitute a justiciable "controversy," *inter alia*, the issues presented must be

"ripe" and not "moot." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013).

This means there must be a "real and substantial controversy admitting of specific relief through a

decree of a conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts." *Camerlo v. Howard Johnson Co.*, 710 F.2d 987, 989 (3d Cir.

1983) (quoting *Haworth*, 300 U.S. at 241); *Bird v. Penn Cent. Co.*, 351 F. Supp. 700, 701 (E.D.

Pa. 1972) ("A court's function in a declaratory judgment suit, as in an action for coercive relief, is

to settle actual disputes between adverse parties, not to rule on abstract questions or to determine

what a party's rights might be in factual situations that may or may not come to pass."). Of course,

the difference between an abstract question and a constitutional "controversy" is necessarily one

of degree. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). As the Third Circuit

explained:

> [T]o satisfy Article III's case or controversy requirement, an action must present
> (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that
> affects an individual in a concrete manner so as to provide the factual predicate for
> reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for
> judicial resolution.

*Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) (quoting *Armstrong World Indus.,*

*Inc. v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992)).

In the specific context of declaratory judgment actions, courts in this Circuit look at three

key factors to determine whether there is an actual controversy: (1) the adversity of interest

between the parties; (2) the conclusivity that a declaratory judgment would have on the legal

relationship between the parties; and (3) the practical help, or utility, of a declaratory judgment. *Armstrong*, 961 F.2d at 411. All three factors must be met for a declaratory judgment action to be justiciable. *Travelers*, 72 F.3d at 1154 ("If we are satisfied that all three elements are present, the declaratory judgment action is ripe."). None of these factors is present with respect to this action.

     a.  <u>Adversity of Interest</u>

The first factor is the adversity of interest between the parties. "Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers*, 72 F.3d at 1154. Where, as here, a declaratory judgment action is based on a contingency, "it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." *Armstrong*, 961 F.2d at 411-12. Thus, litigants seeking a declaratory judgment for contingent harms only set forth a justiciable controversy if they "demonstrate that the probability of that future event occurring is real and substantial" and "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Armstrong*, 961 F.2d at 412 (internal quotations omitted).

Here, Plaintiffs seek a declaratory judgment regarding their obligations to defend and indemnify the Wyndham Defendants in the Underlying Action, which has been effectively stayed and dormant for more than a year with no sign of change. If the Underlying Action does not proceed, the Plaintiffs will not have any obligation to defend or indemnify the Wyndham Defendants or the other defendants who are also insured under Plaintiffs' policies. Plaintiffs cannot provide any indication that the Underlying Action will ever move forward, let alone meet their burden of establishing the probability of the Underlying Action being revived as being "real and substantial" and of "sufficient immediacy" to warrant a declaratory judgment. Since Plaintiffs' claims are based solely on this speculative contingency, there is minimal, if any, adversity between Plaintiffs and the Wyndham Defendants or the other insured defendants. *See Armstrong*, 961 F.2d

9

at 420 ("because plaintiffs' challenge to the constitutionality of Act 36 is contingent, the adversity of interest between the parties here is minimal").

With respect to Plaintiffs' duty to indemnify in particular, for which Plaintiffs seek a declaration that no such duty exists, *see* ECF 1 (Counts I-X, XII), there is no adversity of interest. As numerous courts have held, no adversity typically exists between an insurer and its insured with respect to the duty to indemnify unless and until there is a judgment establishing liability in the underlying action because, until that point, the insured and the insurer "share[] the interest of proving that [the insured] is not liable in the underlying suit." *E.g.*, *Knightbrook Ins. Co. v. DNA Ambulance, Inc.*, No. CIV.A. 13-2961, 2013 WL 12145016, at *6 n.12 (E.D. Pa. Oct. 2, 2013) (explaining that an insurer's duty to indemnify was not ripe because the determination of adversity among the parties was "unanswerable" since the underlying case was stayed and had not determined liability); *Victoria Ins. Co. v. Mincin Insulation Servs., Inc.*, No. CIV A 08-909, 2009 WL 90644, at *6 (W.D. Pa. Jan. 14, 2009); *Charter Oak Fire Ins. Co. v. Lazenby*, No. 1:10-CV-00138-MBC, 2012 WL 2958246, at *8 (W.D. Pa. July 18, 2012) ("As to Lazenby, there is no adversity because he and Travelers share a similar interest, namely that he be found not liable for Autilli's injuries."); *see also Slate Bar & Lounge*, 2017 WL 4681311, at *7 (holding that the question of the insurer's duty to indemnify was not ripe until the insured is found liable in the underlying suit).

Where the Underlying Action is effectively stayed and has been dormant for more than a year, and especially insofar as Plaintiffs seek a declaration that they have no duty to indemnify, there is no adversity between the parties and this factor weighs heavily against the existence of jurisdiction.

b.  <u>Conclusivity of a Declaratory Judgment</u>

The second factor is the conclusivity of the requested declaratory judgment. Said another way, the declaratory judgment action must conclusively define and clarify the parties' legal status based on a set of concrete facts, rather than attempting to set the parties' rights based on hypothetical facts. *See Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 648 (3d. Cir. 1990); *Travelers*, 72 F.3d at 1155 (Conclusivity requires that "the legal status of the parties must be changed or clarified by the declaration. … An integral part of the conclusiveness inquiry is the necessity that the court be presented with a set of facts from which it can make findings."); *see also Armstrong*, 961 F.2d at 412 (explaining that "[a]ny contest must be based on a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (internal quotation omitted). As the Third Circuit in *Step-Saver* explained, when a party seeks a declaration based on a contingency, any resulting declaration "itself would be a contingency" and such a declaration would be "an exercise in futility." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 648 (3d Cir. 1990); *Armstrong*, 961 F.2d at 412.

Here, Plaintiffs seek a determination based on not one, but at least two, contingencies. Not only would the effective stay of the Underlying Action have to be vacated by removal of the case from the deferred docket, which may never happen, but the Underlying Action would also have to conclusively establish certain facts upon which Plaintiffs base their requested declaration. For example, Plaintiffs seek declarations "to the extent that" various allegations are established as facts in the Underlying Action. ECF 1, ¶ 110 ("To the extent that the A.H. Plaintiff establishes liability for corporate negligence of the Wyndham Defendants … such liability is not encompassed by the additional insured endorsement …."); ¶ 84 ("To the extent that the minor Plaintiff establishes that … the Wyndham Defendants were actually or constructively aware that minors were subjected to

11

sex trafficking at the [Hotel], and allowed such conduct to take place, the injury sustained by A.H. is encompassed by the policy exclusion for 'bodily injury' expected or intended by the insured."); *see also* ¶ 98 ("The allegations set forth in the Complaint, *if credited*, establish the commission of a criminal act by one or more of the 4200 Defendants or Wyndham Defendants.") (emphasis added).[5]

As Plaintiffs' Complaint makes clear, the requested relief is based on the hypothetical situation in which the stayed Underlying Action definitively establishes those allegations as facts. This is precisely the type of contingency that the court in *Step-Saver* rejected. In *Step-Saver*, a vendor brought a declaratory judgment action against certain suppliers, seeking a declaration that the suppliers were liable "if" certain collateral underlying actions filed by the vendor's customers established that there were defects in the suppliers' products. *See generally Step-Saver*, 912 F.2d 643. Like here, those underlying actions were stayed as a result of a bankruptcy filing. *Step-Saver*, 912 F.2d at 646. The Third Circuit explained that the declaratory request was itself a contingency and thus any declaration would not be conclusive. *Step-Saver*, 912 F.2d at 648 ("[E]ven if we issued the requested declaration, the legal status of the parties would not change (nor would it be clarified), because our declaration itself would be a contingency."); *see also AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*, 135 F. Supp. 3d 321, 326 (W.D. Pa. 2015) ("AXIS's Complaint here is not worded as such a strict logical conditional, but the contingency is just as evident.").

---

[5] Moreover, to the extent Plaintiffs seek a declaration regarding their duty to indemnify the Wyndham Defendants for liability that has not been established, which Plaintiffs undisputedly seek with respect to eleven of their thirteen counts, *see* ECF 1 (Counts I-X, XII), courts have held that such a determination is also contingent and would not be conclusive for the reasons discussed in Section I.a. *See Am. States Ins. Co. v. Component Techs., Inc.*, 420 F. Supp. 2d 373, 375 (M.D. Pa. 2005) ("The second *Step-Saver* factor also weighs in favor of dismissing this case because we cannot provide a conclusive ruling. Here, any declaratory ruling in this action regarding Plaintiff's duty to indemnify would be contingent upon the insureds subsequently being held liable in the underlying suit.").

As a result, the best that Plaintiffs can expect is a declaration that they do not owe insurance coverage *if* certain conclusions are reached in the Underlying Action, but such a declaration does nothing to conclusively resolve the legal relationship between the parties, especially where, as here, it is purely speculative whether any conclusions will be reached in the dormant Underlying Action.

      c.  <u>Utility of a Declaratory Judgment</u>

The third factor is the practical help or utility of a declaratory judgment. This factor, in particular, weighs most heavily against the finding of a justiciable controversy. As the Third Circuit has explained, "one of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo" so "a case should not be considered justiciable unless the court is convinced that" by ruling on the issue "a useful purpose will be served." *Armstrong*, 961 F.2d at 412 (quoting *Step-Saver*). Thus, "even if a declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless the parties' plans of actions are likely to be affected by a declaratory judgment." *Armstrong*, 961 F.2d at 412 (internal quotation omitted).

Here, the Underlying Action has been effectively stayed now for over a year, during which time Plaintiffs have not defended the Wyndham Defendants. Nor is the Underlying Action progressing towards a judgment, without which there can be no liability that Plaintiffs would be obligated to indemnify. If the Underlying Action remains effectively stayed, Plaintiffs' request for a declaration that it need not defend or indemnify the Wyndham Defendants serves no practical utility and Plaintiffs' actions would be exactly the same with or without its requested declaratory judgment.

This is not a situation in which a declaratory judgment would help a party avoid the accrual of avoidable damages. To the contrary, Plaintiffs are not currently incurring any costs and a declaratory judgment at this time serves no significant purpose. *See Travelers Ins. Co. v. Davis*,

490 F.2d 536, 543 (3d Cir. 1974) (objective of Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights") (quoting *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937)). Nor is there any significant hardship to Plaintiffs in not being able to obtain a final determination of their potential liability; at worst, the only "hardship" to Plaintiffs is that they have to bear some uncertain risk of liability in the future, but that is precisely what Plaintiffs do as part of their day-to-day business. *AXIS*, at 329 ("[T]he hardship to [the insurer] of withholding judgment now is not excessive. Again, withholding judgment … would leave [the insurer] with the risk of a liability in the future, but bearing risk is what insurance companies do.").

Moreover, as discussed in Section III, Plaintiffs ask this Court to make determinations of facts that have not yet been, and may never be, determined in the Underlying Action. Rather than limiting avoidable damages, this declaratory judgment action is forcing the parties to engage in potentially needless litigation to determine their rights and obligations with respect to costs that may never materialize. There is no reason that these issues need to be determined now and every reason to wait and, as a result, this action does not set forth an actual controversy and should be dismissed under Rule 12(b)(1) due to a lack of subject matter jurisdiction.

## II.    PLAINTIFFS LACK A STATUTORY BASIS FOR INVOKING FEDERAL JURISDICTION OVER THIS ACTION.

In addition to the lack of "controversy" sufficient to satisfy the requirements of Article III, this Court should dismiss this action because the Plaintiffs fail to meet their burden to establish the amount in controversy required to invoke federal diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs' Complaint states this action is brought under the Declaratory Judgment Act (28 U.S.C.

14

§ 2201[6] and the diversity statute (28 U.S.C. § 1332) and that this Court "has jurisdiction because the amount in controversy is over $75,000 and the lawsuit involves citizens of different states." ECF 1, ¶ 14. Under § 1332, the Court may exercise jurisdiction only "where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Plaintiffs, however, cannot satisfy this amount-in-controversy requirement of § 1332(a) under the facts of this case.

The party invoking diversity jurisdiction "bears the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016); *see also Victoria*, 2009 WL 90644, at *1-2 (explaining that on a motion to dismiss under Rule 12(b)(1), "it is the plaintiff that bears the ultimate burden to prove that jurisdiction does in fact exist."). Courts recognize that a plaintiff's burden to establish the amount in controversy is typically not a particularly onerous burden. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938) (holding that the party only needs to satisfy to the court that the claim of the amount is made in good faith and "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). Nonetheless, Plaintiffs cannot meet their burden under the facts of this case.

Critically, "in making the assessment '[t]he temporal focus of the court's evaluation … is on the time that the complaint was filed.'" *Stevens & Ricci*, 835 F.3d at 395 (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997), *as amended* (Feb. 18, 1997)). When evaluating whether a plaintiff has established the amount-in-controversy requirement, "later events [cannot]

---

[6] The Declaratory Judgment Act does not create federal jurisdiction where otherwise there is none. *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (stating that the Declaratory Judgment Act "alone does not provide a court with jurisdiction."); *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n.2 (3d Cir. 1989) ("The [Declaratory Judgment] Act is not an independent basis of federal jurisdiction.").

increase the amount in controversy and give rise to jurisdiction that did not properly exist at the time of the complaint's filing." *Stevens & Ricci*, 835 F.3d at 395. Similarly, although an insurer may rely on the policy's duty to defend to meet the amount-in-controversy requirement, insurers cannot rely on "hypothetical defense costs" to make up the difference between the amount claimed in the underlying action and the jurisdictional amount. *Essex Ins. Co. v. J&D Blackwell Enterprises, Inc.*, 1993 WL 19743, at *2-3 (E.D. Pa. Jan. 25, 1993), *aff'd*, 16 F.3d 403 (3d Cir. 1993).

In light of the foregoing, a determination of the amount in controversy must be determined based on the facts that Plaintiffs seek solely declaratory relief (and no damages or past costs) and that the Underlying Action is effectively stayed. At the time Plaintiffs filed the Complaint, they were not likely to incur additional defense or indemnity costs in excess of $75,000 because the Underlying Action was effectively stayed and had been dormant for over a year. In order for there to be any amount in controversy, the Underlying Action would need to be revived and there is no indication that will happen. Given these undisputed facts, it is difficult to fathom how Plaintiffs can reasonably expect that their prospective defense and indemnity obligations to the Wyndham Defendants might exceed $75,000.

Matters such as this one are precisely why Congress has enacted and continues to maintain (and, from time to time, increases) the amount-in-controversy requirement. *See* 15A MOORE'S FEDERAL PRACTICE - CIVIL § 102.100 (2022) ("Congress's decision to impose a jurisdictional minimum in diversity cases reflects its judgment that the federal courts should not expend resources on cases of only limited financial worth."). Accordingly, this Court's resources would not be appropriately used in resolving this matter, and the Court does not have jurisdiction under § 1332 and should grant this Motion.

### III.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION AND DISMISS OR STAY THE ACTION.

In the alternative, even if this Court determines that it has subject matter jurisdiction over this action, it should nevertheless exercise its authority to abstain and dismiss or stay this action.[7]

The Declaratory Judgment Act creates "an opportunity, rather than a duty" to grant declaratory judgments. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see* 28 U.S.C. § 2201(a) (federal courts "*may* declare the rights and other legal relations") (emphasis added). In the context of a declaratory judgment action, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration," and "a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment[.]" *Wilton*, 515 U.S. at 288; *see also Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 138 (3d Cir. 2014) (explaining that a district court's decision to withhold a declaratory judgment is reviewed under an abuse-of-discretion standard). Moreover, as the Third Circuit has explained, a declaratory judgment action between an insurer and its insured "has no special call on the federal forum." *Reifer*, 751 F.3d at 141 (quoting *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000), *as amended* (Jan. 30, 2001)).

In *Reifer*, the Third Circuit explained that a district court deciding whether to exercise its discretion to hear a declaratory judgment action must give "meaningful consideration" to the following non-exhaustive list of factors, "to the extent they are relevant":

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;

---

[7] Although some federal courts have held that where a declaratory judgment action is not ripe, "the proper disposition is dismissal rather than a stay[,]" *see Slate Bar & Lounge, Inc. v. Founders Ins. Co.*, 2017 WL 4681311, at *7 (M.D. Pa. 2017), under the Declaratory Judgment Act, courts may "stay or dismiss at any time." *E.g.*, *Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 70 (E.D. Pa. 1997).

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146. Because the *Reifer* factors weigh in favor of abstention, this Court should abstain from exercising jurisdiction over this declaratory judgment action.

First, there is minimal likelihood that this Court's declaration would resolve any uncertainty of obligation because, as explained in Section I, nothing would change the current state of affairs as the result of a judgment issued by this Court. Because the Underlying Action has been effectively stayed for more than a year, there is no reason to speculate that the Underlying Action will suddenly proceed such that Plaintiffs will incur costs. Moreover, because Plaintiffs seek a declaration "to the extent that" certain facts or liabilities are established in the Underlying Action, the declaration would itself be contingent. *See* Section I.b. If this Court entertains Plaintiffs' request to rule on a hypothetical, it will be providing little more certainty, if any, than already exists.

Second, the convenience of the parties weighs heavily against this Court exercising jurisdiction. Litigating this declaratory judgment action will be costly, particularly since the Underlying Action is effectively stayed, and it will run the risk of resolving facts that are ultimately at issue in the Underlying Action (as discussed further, below) should the action ever be revived. Furthermore, this litigation would proceed and result in litigation expenses with nothing at stake

between the parties. Both parties have much to lose with little to gain in this litigation, so the parties' "convenience" weighs toward abstention.

Third, there is no public interest in settlement of any uncertainty involved here. As enshrined in the Constitution and numerous acts of Congress, the public interest favors judicial resolution of cases and controversies, not the issuance of advisory opinions on hypotheticals. Consequently, the Court would actually advance the public interest by declining jurisdiction over this matter.

The fifth and sixth factors also favor dismissal.[8] As the Third Circuit has explained, "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Reifer*, 751 F.3d at 141 (internal quotations omitted). While there is no truly duplicative parallel litigation here, Plaintiffs' requested declaration is only necessary upon the Underlying Action moving forward and, in the uncertain event that it does, this Court would then need to resolve many duplicative issues raised in and that are more properly determined in the Underlying Action.

The seventh and eighth factors weigh most heavily in favor of dismissal.[9] These factors focus on potential *res judicata* impacts and the inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. Although the Wyndham Defendants do not allege that the Plaintiffs have intentionally engaged in "procedural fencing," Plaintiffs have made allegations that

---

[8] The fourth factor has no relevance to this action.

[9] Of course, if the Underlying Action remains deferred, then the seventh and eight factors would not weigh heavily in favor of abstention but, under that scenario, the first, second, and third factors would overwhelmingly weigh in favor of abstention since the declaration Plaintiffs seek would serve no point.

could have adverse collateral effects in the Underlying Action, and this Court should be mindful of the potential collateral effects of any rulings in this action.

In applying the eighth factor, which is specifically designed to apply in the context of insurance disputes involving an underlying action, courts look to whether "there is [] danger that [the insurer] will establish facts in the declaratory judgment action that could prejudice [the insureds] in the state court suit." *State Farm Mut. Auto. Ins. Co. v. Dabbene*, 511 F. Supp. 3d 600, 615 (E.D. Pa. 2021) (quoting *Landmark Am. Ins. Co. v. Mandracchia*, 2019 WL 3934913, at *4 (E.D. Pa. Aug. 19, 2019)). In *Allstate Insurance Co. v. Antoine*, 2012 WL 707069, at *5 (E.D. Pa. 2012), the court found that a conflict of interest was "palpable" where common issues were central to the outcome of both the declaratory judgment action and the underlying state court action. Not only is there "danger" that Plaintiffs might establish facts in this action that could prejudice the insureds in the Underlying Action, establishing such facts is the only way for Plaintiffs to succeed in this action.

Plaintiffs seek to establish numerous facts in this declaratory judgment action that could be case-determinative in the Underlying Action.[10] For example, Plaintiffs seek a declaration that the Wyndham Defendants are not entitled to coverage to the extent that their conduct was criminal, ECF 1, ¶¶ 67-80, 95-98, or that coverage is barred "to the extent that" A.H. establishes the Wyndham Defendants were aware of the alleged trafficking and/or intended the alleged injuries,

---

[10] It cannot be disputed that there are unresolved facts in the Underlying Action that could be coverage-dispositive. To the contrary, Plaintiffs successfully moved to intervene in the Underlying Action on this basis. Plaintiffs have argued, for example, that certain issues like "whether an award of punitive damages is based on direct or vicarious liability" and "whether the jury found that the [4200 Roosevelt Defendants] had violated the Pennsylvania Human Trafficking Law" are "probative and necessary to the duty of indemnification." Fleury Decl., Ex. 5, *A.H. v. Roosevelt Inn, LLC, et al.*, No. 1797 EDA 2020, Appellate Opinion Granting Plaintiffs' Motion to Intervene, at 4, 8 (quoting Plaintiffs' brief). Moreover, because Plaintiffs successfully intervened in the Underlying Action, they are well positioned to protect their own coverage interests.

ECF 1, ¶¶ 83-87. The Wyndham Defendants vigorously deny these allegations. Whether or not the Wyndham Defendants committed intentional or criminal acts; had knowledge of the alleged sex trafficking; or whether the alleged trafficking even occurred at all, are all issues that could be dispositive to the Wyndham Defendants' liability in the Underlying Action and are also issues Plaintiffs seek to have resolved in this action. For this Court to attempt to resolve those issues on a limited factual record would severely prejudice the Wyndham Defendants by forcing them to litigate the merits of the underlying allegations in front of this Court before those issues are resolved in the Underlying Action.

This was precisely the situation that the court in *Nationwide v. Shank* sought to avoid, in which the Eastern District of Pennsylvania dismissed an action for declaratory judgment with respect to the duty to defend but stayed the action with respect to the duty to indemnify because, *inter alia*, for the court to determine coverage it would be required to determine whether certain alleged acts of sexual assault were intentional, or even that the acts occurred, and for the federal court to decide those issues would be "irresponsible," "raise serious questions of collateral estoppel," and "overly prejudice" the litigants. *Nationwide v. Shank*, 951 F. Supp. at 72.

Similar to the policyholder in *Shank*, the Wyndham Defendants would be placed in the prejudicial and extraordinary position of having to defend themselves not only against A.H. in the Underlying Action, but also against its insurers, which are obligated to defend the Wyndham Defendants. Plaintiffs' bad faith conduct in making outrageous and false allegations against their own insureds in this matter of criminal activity goes far beyond the pale. In another case involving certain of the Wyndham Defendants, a federal court recently described such tactics as "jeopardiz[ing] the Hotel Defendants' defense of the [underlying] action," allowing an insurer to develop facts "which could arguably be detrimental to its own insureds' positions in the underlying

lawsuit," and "at a minimum, … an ethical dilemma" for insurers. *Mt. Hawley Ins. Co. v. Lincoln Hotels, LLC, et al.*, No. 1:20-CV-4444-WMR, 2021 WL 1351858, at *3 (N.D. Ga. Mar. 15, 2021) (staying discovery in an insurer's declaratory judgment action until the resolution of the underlying actions because the insurer's discovery was seeking to establish facts regarding, *inter alia*, whether a hotel franchisor knew or should have known about alleged human trafficking). Allowing this action to proceed would also risk inconsistent results and be an inefficient and potentially duplicative use of judicial and party resources. In bringing this action, Plaintiffs have created a "palpable" conflict of interest and, as a result, *Reifer* instructs that this Court should abstain from exercising jurisdiction over this action.

For the reasons discussed above, the *Reifer* factors weigh heavily in favor of finding that this Court should abstain from ruling on Plaintiffs' request for declaratory judgment and either dismiss or stay this action. A declaratory judgment in this matter would offer only a limited (if any) benefit to the parties while potentially resulting in a massive detriment to the Wyndham Defendants and the other parties or, at the very least, causing the parties to incur potentially needless costs. As a result, this Court's abstention is appropriate under *Wilton* and *Reifer*.

## CONCLUSION

The Wyndham Defendants respectfully request that this Court sustain this Motion and dismiss Plaintiffs' Complaint due to a lack of subject matter jurisdiction. In the alternative, the Wyndham Defendants request that this Court exercise its authority to dismiss or stay this action pending the occurrence of significant developments in the Underlying Action.

To the extent Plaintiffs oppose or object to this Motion, the Wyndham Defendants respectfully request the Court allow oral argument to address the Motion and any opposition or objections to the same.

Dated: September 2, 2022              Respectfully submitted,

*/s/ Erin Fleury*

**K&L GATES LLP**
Erin Fleury (PA ID #320545)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Erin.Fleury@klgates.com
*-and-*
Donald W. Kiel (*pro hac vice* anticipated)
Anthony P. La Rocco (*pro hac vice* anticipated)
One Newark Center
Tenth Floor
Newark, NJ 07102-5252
Telephone: (973) 848-4000
Donald.Kiel@klgates.com
Anthony.LaRocco@klgates.com

*Attorneys for the Wyndham Defendants*

23