# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEPOSITORS INSURANCE COMPANY, NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY, AMCO INSURANCE COMPANY, and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY<br><br>v.<br><br>4200 ROOSEVELT LLC, 4200 ROSE HOSPITALITY, LLC, WYNDHAM WORLDWIDE CORPORATION, WYNDHAM HOTEL & RESORTS, INC., WYNDHAM HOTEL AND RESORTS, LLC, WYNDHAM HOTEL MANAGEMENT, INC., WYNDHAM HOTEL GROUP, LLC, SURATI MANAGEMENT GROUP, LLC, and A.H., AN INDIVIDUAL | CIVIL ACTION<br><br>NO. 2:22-CV-02065<br><br>**WYNDHAM DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO DISMISS OR STAY PLAINTIFFS' COMPLAINT** |

**K&L GATES LLP**
Attorneys for the Wyndham Defendants

Erin Fleury (PA ID #320545)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Erin.Fleury@klgates.com
-*and*-
Donald W. Kiel (*pro hac vice* anticipated)
Anthony P. La Rocco (*pro hac vice* anticipated)
One Newark Center
Tenth Floor
Newark, NJ 07102-5252
Telephone: (973) 848-4000
Donald.Kiel@klgates.com
Anthony.LaRocco@klgates.com

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.    THERE IS NO JUSTICIABLE "CASE OR CONTROVERSY" ........................................ 2

        a.    Adversity of Interest ................................................................................................ 2

        b.    Conclusivity of a Declaratory Judgment ................................................................ 5

        c.    Utility of a Declaratory Judgment .......................................................................... 7

    II.    PLAINTIFFS LACK A STATUTORY BASIS FOR FEDERAL JURISDICTION ....... 8

    III.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION ............... 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ACandS, Inc. v. Aetna Cas. & Sur. Co.*,
   666 F.2d 819 (3rd Cir. 1981) ................................................................................................3

*Armstrong World Indus., Inc. v. Adams*,
   961 F.2d 405 (3d Cir. 1992) ................................................................................................4, 7

*Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*,
   835 F.3d 388 (3d Cir. 2016) ................................................................................................8

*AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*,
   135 F. Supp. 3d 321 (W.D. Pa. 2015) ..................................................................................7

*Bird v. Penn Cent. Co.*,
   351 F. Supp. 700 (E.D. Pa. 1972) .......................................................................................3

*Erie Ins. Exchange v. Moore*,
   228 A.3d 258 (Pa. 2020) .....................................................................................................6

*Knightbrook Ins. Co. v. DNA Ambulance, Inc.*,
   No. CIV.A. 13-2961, 2013 WL 6662745 (E.D. Pa. Dec. 16, 2013) ....................................4

*Reifer v. Westport Ins. Corp.*,
   751 F.3d 129 (3d Cir. 2014) ..............................................................................................10

*Sec. Nat'l Ins. Co. v. Amchin*,
   No. CV 15-750, 2016 WL 1392258 (E.D. Pa. Apr. 7, 2016) ....................................4, 5, 8, 9

*State Farm Mut. Auto. Ins. Co. v. Ormston*,
   550 F. Supp. 103 (E.D. Pa. 1982) .......................................................................................4

*Step-Saver Data Systems, Inc. v. Wyse Technology*,
   912 F.2d 643 (3d. Cir. 1990) ............................................................................................5, 7

*Travelers Ins. Co. v. Obusek*,
   72 F.3d 1148 (3d Cir. 1995) ................................................................................................8

**Statutes**

Declaratory Judgment Act ......................................................................................................5, 9

**Other Authorities**

N.J. Ct. R. 4:30A....................................................................................................................3

Pa.R.C.P. 2330(a)...................................................................................................................10

**PRELIMINARY STATEMENT**

Despite more than 20 pages of argument in their brief, Plaintiffs[1] cannot contest, and indeed admit, that the Underlying Action has been stayed for more than a year and that they are not currently at risk of spending anything on the defense of the Underlying Action. Plaintiffs can only speculate about whether the Underlying Action will ever continue forward. That admission alone is fatal to their attempt to litigate this lawsuit now. Accordingly, the Wyndham Defendants have moved to dismiss or stay Plaintiffs' complaint filed on May 26, 2022 (the "Complaint"), and hereby submit this reply brief in further support of their Motion.

Plaintiffs seek an advisory opinion declaring that they have no duty to defend or indemnify their policyholders under certain hypothetical facts if the long-stayed Underlying Action is ever revived and notwithstanding that there is no live controversy regarding insurance coverage. Plaintiffs seek this declaration notwithstanding the fact that they admit the Philadelphia County Court of Common Pleas stayed the Underlying Action more than a year ago, that "docket activity … has been slim" and that no party has attempted to "remove the case from deferred status[.]" Plaintiffs' Brief, at 6. Moreover, since Plaintiffs claim they do not seek to resolve facts relevant to the Underlying Action in this action, it is clear that Plaintiffs' requested relief seeks a contingent advisory opinion of what Plaintiffs' rights might be in the hypothetical situation that the Underlying Action resolves factual issues in a certain way. *Id.* at 13, 20. This tactic by Plaintiffs would waste judicial and party resources without providing any actual utility or resolution of uncertainties. All of these factors weigh heavily against jurisdiction while also weighing in favor

---

[1] Capitalized terms herein have the same definitions as in the Brief of the Wyndham Defendants in Support of Motion to Dismiss or Stay Plaintiffs' Complaint, ECF 32-2 ("Initial Brief") and the Plaintiffs' Memorandum of Law in Opposition to the Wyndham Defendants' Motion to Dismiss Complaint or Stay Declaratory Judgment Action, ECF 34-2 ("Plaintiffs' Brief").

1

of this Court exercising its broad discretion to abstain and dismiss or stay this action.

## LEGAL ARGUMENT

I. **THERE IS NO JUSTICIABLE "CASE OR CONTROVERSY."**

Plaintiffs concede that a determination of their duty to indemnify is premature unless the Court first holds there is no duty to defend. *Id.* at 21-22 ("If, a duty to defend were found, then the duty of indemnity must await the conclusion of the tort case at which time a determination is made on whether the actual facts underlying liability are encompassed by the policy coverage."); *id.* at 20 (there is "no … need to resolve the duty to indemnify prior to the development of facts in the underlying case[.]"). Said another way, Plaintiffs agree that their claims on the duty to indemnify do not present a justiciable controversy and argue that the only basis for this Court to rule on their request for a declaration on the duty to indemnify is if this Court first finds there is no duty to defend.[2] Thus, the only disputed question is whether there is a justiciable controversy with respect to Plaintiffs' claims that they owe no duty to defend the stayed Underlying Action. For the reasons set forth below, there is no such controversy.

    a. <u>Adversity of Interest</u>

Even focusing solely on the duty to defend, as Plaintiffs urge this Court to do, there is no justiciable controversy based on the facts of this case. Plaintiffs do not dispute that the Underlying Action was stayed in June 2021 nor do they dispute that the case was remanded to the state court in October 2021 and has been in "deferred status" with no "docket activity" in the eleven months

---

[2] This position is at odds with the fact that Plaintiffs' Complaint seeks a declaration on certain issues only on the duty to indemnify and not the duty to defend. *E.g.*, ECF 1, at 28-30 (Count IX not seeking a declaration on the duty to defend, but only that Plaintiffs have no duty to indemnify "[t]o the extent that the A.H. Plaintiff establishes liability for corporate negligence … as opposed to vicarious liability"). Plaintiffs' acknowledgement that a standalone declaration on the duty to indemnify is premature concedes that such claims do not present a justiciable controversy.

since the remand.³ *See* ECF 34, Plaintiffs' Answer in Opposition to Motion, ¶¶ 3-6. This stands in stark contrast to the facts of the primary case on which Plaintiffs rely, *ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 666 F.2d 819, 821 n.4 (3d Cir. 1981), where the policyholder was facing 800 active asbestos lawsuits and was forced to actively defend those lawsuits while its insurers sat on the sidelines, pointing the finger at each other as responsible to defend their policyholder.

There is also no genuine dispute that, should the Underlying Action never be revived, there would be no actual controversy between Plaintiffs and the Wyndham Defendants because there would be no active case to defend or liability to indemnify. Instead, Plaintiffs speculate that there is a justiciable controversy because the "probability that the case will continue … is real and substantial" without identifying any actions taken over the last year to support such a conclusion. Plaintiffs' Brief, at 10. Contrary to Plaintiffs' assertions, the Wyndham Defendants do not "wishfully characterize" the underlying complaint as "permanently dormant[.]" *Id.* at 6-7. Instead, they focus on the undisputed and relevant <u>fact</u> that it is <u>presently dormant</u> and has been for more than a year. As a result, there is no "live" justiciable controversy between the parties and Plaintiffs seek nothing more than an advisory opinion of what their "rights might be in factual situations that may or may not come to pass." *Bird v. Penn Cent. Co.*, 351 F. Supp. 700, 701 (E.D. Pa. 1972).

Instead of addressing the facts specific to this case, Plaintiffs' arguments rely on inapposite cases where the underlying claim was being actively litigated against the policyholder and entirely

---

³ Plaintiffs attempt to suggest some significance regarding the status of the Underlying Action (A.H.) by pointing out that two of the five Wyndham Defendants are involved in a lawsuit against one of the 4200 Defendants involving claims under New Jersey law for contractual defense and indemnification for nine underlying actions, including the Underlying Action. The inclusion of the Underlying Action in that complaint is not evidence that the Underlying Action is a live controversy, it is simply evidence that the parties in that case did not want to run afoul of New Jersey's "entire controversy doctrine," a claim preclusion rule requiring litigants to assert all potential claims relating to the same transaction or controversy. N.J. Ct. R. 4:30A.

discount the material difference in this matter, where the Underlying Action has been stayed for over a year.[4] Here, Plaintiffs seek a declaration about insurance obligations that will only become relevant if the Underlying Action is revived, which may never happen. When a declaratory action is based on such a contingency, "it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy[.]" *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411-12 (3d Cir. 1992). In light of the fact that the Underlying Action has been stayed for more than a year, with no sign of being revived, the situation is more akin to an underlying claim or demand for coverage that has been withdrawn or deferred, without prejudice to assert it again in the future. In such situations, courts have held that a declaratory judgment on coverage is not justiciable.

For example, in *Sec. Nat'l Ins. Co. v. Amchin*, No. CV 15-750, 2016 WL 1392258, at *5 (E.D. Pa. Apr. 7, 2016), this Court dismissed an insurer's declaratory judgment action as moot after the underlying claim had been withdrawn so the policyholder no longer had reason to seek coverage, notwithstanding the fact that the policyholder reserved the right to seek coverage should the underlying claim be revived. As the Court explained, "[t]he justiciability of a declaratory judgment action in the insurance context hinges on whether a defendant is actually seeking to obtain coverage under the plaintiff's policy." *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Ormston*, 550 F. Supp. 103, 104-06 (E.D. Pa. 1982) (holding a declaratory judgment action brought by an insurer was not justiciable because the claims became "moot" when the policyholder withdrew their claim for insurance coverage, even though the withdrawal was without prejudice).

---

[4] None of the cases Plaintiffs cite resolved a duty to defend or indemnify in any situation resembling the unique factual situation here, where the underlying case has been inactive for more than a year and there is no active case for the insurer to defend. The only case Plaintiffs cite involving a stayed or withdrawn underlying claim was *Knightbrook*, but they fail to inform the Court that the underlying case in *Knightbrook* had been stayed by party agreement pending the resolution of the declaratory judgment action. *Knightbrook Ins. Co. v. DNA Ambulance, Inc.*, No. CIV.A. 13-2961, 2013 WL 6662745, at *2 (E.D. Pa. Dec. 16, 2013).

4

Similar to the policyholder in *Amchin*, the Wyndham Defendants have no present need for Plaintiffs' defense of the Underlying Action because it has been stayed and its revival is uncertain at best. Even though the Wyndham Defendants reserve the right to seek coverage requiring Plaintiffs to defend and indemnify them, on the contingency that the Underlying Action is revived, that may never occur and there is presently no such "live" controversy appropriate for judicial determination. *Amchin*, 2016 WL 1392258, at *6 ("The mere possibility the claim will be reasserted is not sufficient to make this case live … and because there is no current claim for coverage, granting a present determination of the issues would not resolve any case of actual controversy between the parties, as required by the Declaratory Judgment Act."). As a result, there is no justiciable controversy.

      b. <u>Conclusivity of a Declaratory Judgment</u>

In opposing this Motion, Plaintiffs do not refute that it would be improper for this action to resolve factual issues that are also implicated in the Underlying Action and claim that they do not seek to resolve such facts in this action. Plaintiffs' Brief, at 13, 20. This is an important admission because, without a resolution of such factual issues, Plaintiffs' Complaint clearly seeks the type of contingent, advisory ruling that the court in *Step-Saver* found to be non-justiciable. *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 648 (3d. Cir. 1990).

For example, Count III of Plaintiffs' Complaint seeks a contingent declaration that, "to the extent that" A.H. establishes that the Wyndham Defendants were actually or constructively aware of certain facts, Plaintiffs have no duty to defend or indemnify. ECF 1, ¶¶ 83-85. Plaintiffs contend that this action can proceed without awaiting a factual determination on such underlying allegations because they claim the question is whether the allegations if "assumed or credited to be true, would establish a basis for indemnification[.]" Plaintiffs' Brief, at 20. However, Plaintiffs strategically overlook the fact that the underlying complaint pleads in the alternative and alleges,

5

in addition to allegations of knowledge, that the Wyndham Defendants lacked knowledge and were negligent by, *inter alia*, "[f]ailing to become apprised of the criminal acts that occurred on the premises[.]" *E.g.*, ECF 1-1, ¶ 152(x).[5] This Court cannot make a determination by assuming that one set of underlying allegations will be proven while ignoring conflicting allegations. Instead, the Court must consider all of the allegations, not just the ones that favor Plaintiffs, and it is clear that, when considering all the allegations, the underlying complaint sets forth potentially covered claims, triggering the duty to defend.[6] Moreover, Plaintiffs' Complaint impliedly acknowledges this fact insofar as Plaintiffs recognize that coverage can only be determined "to the extent that" the Underlying Action makes those factual determinations. Because the underlying complaint sets forth alternative and contradictory allegations, Plaintiffs' requested ruling would not clarify the parties' rights and obligations and would instead be contingent on the result of further findings, as Plaintiffs themselves acknowledged in their efforts to intervene.[7] Plaintiffs' argument that their

---

[5] Similarly, the underlying complaint alleges negligence based on violations of human trafficking laws, coverage for which Plaintiffs contend is barred by public policy, but also asserts counts based purely on other forms of negligence, which would be covered. ECF 1-1 (*compare* Count IX, *with* Count XII). Plaintiffs argued that their intervention was necessary in the Underlying Action to determine their coverage obligations because whether defendants violated those laws "is also germane as to whether public policy bars indemnification" and a "general verdict will not answer the question of whether … the Defendants violated the Human Trafficking Law." Second Fleury Decl., Ex. A, Plaintiffs' Brief in Support of Motion to Intervene, at 5-6, 9.

[6] Indeed, Plaintiffs have admitted as much in their efforts to intervene in the Underlying Action but now seek to argue the opposite. Plaintiffs argued that their coverage obligations cannot be determined based on the allegations of the underlying complaint alone, which "includes both negligence and intentional tort claims" and argued that a "general verdict would not allow [Plaintiffs] to readily determine whether the verdict is based on negligence or intentional tort, a fact pertinent to the existence of insurance coverage." *Id.* at 6, 9. The duty to defend is triggered by any allegations that "potentially" fall within coverage and an insurer must defend "mixed" claims (i.e., claims involving both potentially covered and uncovered claims). *Erie Ins. Exchange v. Moore*, 228 A.3d 258, 265 (Pa. 2020).

[7] Should the Wyndham Defendants' Motion be denied, they reserve all rights to assert bad faith claims against Plaintiffs. Plaintiffs' arguments, in their petition to intervene, that they must be allowed to intervene to secure a record that clarifies their duty to indemnify is in direct and stark

conditional requested relief would not create a contingent remedy is wrong.

Plaintiffs do not rebut that their Complaint seeks a declaration of their obligations "to the extent that" A.H. establishes certain facts or liability in the Underlying Action. *E.g.*, ECF 1, ¶¶ 84, 110. This requested declaration is precisely the type of conditional statement that the court in *Step-Saver* rejected as not providing a justiciable controversy. *See Step-Saver*, 912 F.2d 643 (explaining that a request for a declaration of liability "if" certain underlying actions established defects was not justiciable because it sought a non-conclusive and contingent ruling); *see also AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc.*, 135 F. Supp. 3d 321, 326 (W.D. Pa. 2015) ("AXIS's Complaint here is not worded as such a strict logical conditional [as in *Step-Saver*], but the contingency is just as evident."). Especially here, where the Underlying Action has been stayed for more than a year, a declaration of Plaintiffs' obligations "in the event that" the Underlying Action establishes certain facts would not be conclusive and undoubtedly demonstrates the lack of a justiciable controversy.

    c. <u>Utility of a Declaratory Judgment</u>

The third factor is the practical help or utility of a declaratory judgment. As the Wyndham Defendants point out in their Initial Brief, "[t]his factor, in particular, weighs most heavily against the finding of a justiciable controversy." Initial Brief, at 13. Tellingly, however, Plaintiffs completely fail to address the third factor in any meaningful way. Plaintiffs' Brief, at 14-15.

Plaintiffs do not identify a single "useful purpose [that] will be served" or make any effort to explain specifically how granting the declaratory judgment would actually affect "the parties' plans of action" <u>in this case</u>. *Armstrong*, 961 F.2d at 412. Instead, Plaintiffs ignore the Wyndham Defendants' arguments about the lack of utility and make vague claims that the "costs of defense and potential liability exposure in a sex trafficking case are significant" and insurance disputes

---

contrast to their denial of a duty to defend, which is triggered by any allegations that could potentially trigger coverage.

7

"will overhang settlement considerations throughout the life of the case." Plaintiffs' Brief, at 14-15. While that may be true in an active case, the Underlying Action has been and remains stayed and those statements are simply not true, and may never be true, with respect to the Underlying Action. There are no current or anticipated settlement negotiations, no defense costs being incurred, and certainly no legal liability established. Plaintiffs cannot articulate a single way in which a declaration would affect their plan of action under the circumstances of this case, for the simple reason that Plaintiffs are not being asked to take any actions at this time.

A declaratory judgment would provide no meaningful utility in this case. This failure alone is sufficient to create a lack of a justiciable controversy and grant the Wyndham Defendants' Motion. *See Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) (explaining that all three elements must be present for a declaratory judgment action to be ripe); *Amchin*, 2016 WL 1392258, at *5 (explaining that no justiciable controversy exists if "granting a *present* determination of the issues" will not "have some effect in the real world[.]") (emphasis in original).

## II. PLAINTIFFS LACK A STATUTORY BASIS FOR FEDERAL JURISDICTION.

As set forth in full in the Wyndham Defendants' Initial Brief, Plaintiffs bear the burden to establish the amount in controversy required to invoke federal diversity jurisdiction at the time the Complaint was filed. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). Rather than addressing the amount in controversy at that time, Plaintiffs make general conclusions that the "defense and potential indemnity" for cases like the Underlying Action can exceed $75,000. Yet where, as here, Plaintiffs seek only declaratory relief and the Underlying Action is and had been stayed for over a year with no indication whether it might move forward, it is far from a "legal certainty" whether there will ever be <u>any</u> amount in controversy, let alone an amount in excess of $75,000. Under these facts, Plaintiffs cannot meet their burden of meeting the amount-in-controversy threshold.

### III. THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION.

As set forth in the Wyndham Defendants' Initial Brief, the Declaratory Judgment Act provides courts with substantial discretion in declining to hear declaratory judgment actions. Courts consider a number of factors to determine whether abstention is proper, almost all of which weigh in favor of abstention. Initial Brief, at 17-22.

Plaintiffs' arguments on the abstention issue suffer from the same flaw as Plaintiffs' other arguments, which ignore that a declaratory judgment makes little sense when there is no live controversy between the parties. For example, Plaintiffs' rebuttal about the inconvenience of this action (the second *Reifer* factor) is a single sentence noting that both venues are located in the same city. Plaintiffs' Brief, at 18. But an inconvenient location is not the only way the parties could be inconvenienced. Being forced to incur avoidable, significant, and unnecessary legal expenses to resolve an inactive dispute would also be decidedly inconvenient. In *Amchin*, the court explained that under the *Reifer* factors, "the lack of a live demand for insurance coverage weighs substantially against declaratory relief" because being "forced to expend time, labor, and money defending their right to be covered for a non-existing claim against them [is] inconvenient and unwarranted." *Amchin*, 2016 WL 1392258, at *6 n.6 (emphasis added). Similarly, as explained in Section I, a declaration is also not likely to resolve any uncertainty between the parties (the first and third *Reifer* factors) because Plaintiffs seek a contingent and hypothetical declaration.

With respect to the fifth through eighth factors (the parties agree that the fourth factor is neutral), Plaintiffs' argument is primarily based on the contention there is no parallel proceeding because, *inter alia*, "Plaintiffs are not parties to the A.H. case." Plaintiffs' Brief, at 19. However, as discussed in the 4200 Defendants' Brief in Support of the Motion to Dismiss, *see* ECF 35, this argument is misleading since Plaintiffs have moved to intervene, the Superior Court ruled in their favor, and they will almost certainly become intervening parties should the Underlying Action

ever move forward.[8] *See* Fleury Decl., ECF 32-3, Ex. 5. The only reason Plaintiffs are not currently parties is because that case has been stayed for more than a year. Plaintiffs' reliance on such a technicality highlights the weakness of their argument. Moreover, even if the Underlying Action were not a true parallel proceeding, that is not dispositive as the *Reifer* factors themselves were set forth by the Third Circuit in a situation where there was no parallel proceeding. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 148 (3d Cir. 2014) (holding the lack of parallel proceedings was outweighed by the other factors).[9] For the reasons set forth above and in the Initial Brief, this Court should abstain from providing an advisory opinion in this action.

## CONCLUSION

The Wyndham Defendants respectfully request that this Court sustain this Motion and dismiss Plaintiffs' Complaint due to a lack of subject matter jurisdiction. In the alternative, the Wyndham Defendants request that this Court exercise its authority to dismiss or stay this action pending the occurrence of significant developments in the Underlying Action.

Respectfully submitted,
**K&L GATES LLP**
Attorneys for the Wyndham Defendants

Dated: September 21, 2022  */s/ Erin Fleury*
Erin Fleury

---

[8] *See* Pa.R.C.P. 2330(a) ("After entry of an order allowing intervention, the intervener shall have all the rights and liabilities of a party to the action.").

[9] Plaintiffs argue the *Reifer* factors or cases such as *Mt. Hawley*, which are directly relevant to the risk of estoppel and conflicts of interest, are "inapplicable" because they claim that all they seek is a declaration on the facts "as alleged," not a resolution of the actual facts. Plaintiffs' Brief, at 21. However, Plaintiffs simultaneously and inconsistently claim that this Court should resolve, for example, whether the Wyndham Defendants have liability "for their own active malfeasance apart from any acts or omissions of the 4200 Defendants" or whether the policyholders were "permitting sex-trafficking of children to occur[.]" *Id.* at 14-15. Plaintiffs cannot have it both ways. Either they seek to resolve such factual determinations in this action, which would be improper for all the reasons set forth in the Initial Brief; or, as addressed in Section I, Plaintiffs seek an advisory opinion based on the resolution of facts that they have previously argued potentially allege covered claims. In either event, this Court should dismiss or stay this action.